GRENZEBACH, Appellant, v. GRENZEBACH, Respondent.

St. Louis Court of Appeals, April 24, 1906.

1. **DIVORCE: Ex parte Proceeding.** In an action for divorce where the proceeding is ex parte, under section 2929, Revised Statutes 1899, the court before granting the divorce shall require satisfactory proof that the petitioner is the innocent and injured party, and the court may elicit facts tending to show the petitioner is not the innocent and injured party.

2. ———: ———: **Discretion of Trial Court.** On the trial of a suit for divorce brought by the wife, to which the husband did not appear, although the evidence showed gross indignities on the part of the husband which would entitle the wife to a divorce, where the evidence tended to show that their troubles began on account of her visiting his saloon and drinking soda with his customers. it was not an abuse of discretion on the part of the trial court to require the defendant brought in by

subpoena and continue the case for the purpose of getting his testimony, and on the neglect of the plaintiff to produce him or show cause why he could not be brought to testify, the court was justified in dismissing the bill.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*F. A. C. MacManus* for appellant.

STATEMENT.—The suit is by the wife against the husband for divorce from the bonds of matrimony. The charge in the petition is that the husband offered to the wife such indignities as to render her condition intolerable. There was personal service had on defendant who is a resident of the city of St. Louis. No answer was filed and no defense made by him.

It was shown in evidence on the part of plaintiff that they were married at Denver, Colorado, in 1900, and afterward removed to St. Louis, where they have since resided; that he conducted a saloon for a time and afterwards worked at his trade, that of a brickmason, in which occupation he was a foreman; that he drank liquors excessively and was under the influence thereof much of the time, coming home at a late hour at night for his supper and often would require his wife to arise from bed and prepare the meal for him. At other times he would remain around the saloons drinking until two or three o'clock in the morning. They lived in a flat of three rooms and he provided his wife with a housemaid all of the time. On one or more occasions he endeavored to put his arm around and caress the maid. He frequently cursed and used profane language toward his wife and on several occasions endeavored to strike her with a shoe. She was not very strong, was nervous and excitable and was greatly worried much of the time by his conduct and had separated from him on a prior

occasion, remaining away for several months, but returned and continued to live with him for possibly three years thereafter. It was also shown that he was seen out at a late hour not long prior to the last separation, in a carriage with a woman, both of them in an intoxicated condition. The carriage collided with a post, and they were thrown therefrom, whereupon the woman used profane language. The plaintiff also testified that he told her to leave him and let her brothers support her. Several witnesses testified to the good behavior and conduct of the wife, and it was shown that her behavior toward her husband had been kind and affectionate and otherwise she was a good wife. In fact, it appears to one reading the record, without having the opportunity to see, survey and study the witnesses, that the plaintiff made a good case for divorce, and this, too, beyond question, were it not for the cropping out of the fact that the wife frequented his saloon, as will appear from her testimony quoted.

After the evidence heretofore recited had been introduced, and immediately prior to the submission of the cause, the court, for reasons which we must presume were sufficient to it, but which fail to appear from the record, recalled the plaintiff of its own motion, whereupon she testified a second time that several years before, she had separated from her husband, and the court, pressing the examination, inquired:.

"Q. Where were you living then? A. On South Broadway. We had a saloon there and he did not work at his trade then.

"Q. What was the cause of the separation then? A. I could not tell you. He would be drunk all of the time. His friends would ask me to come in and have a a glass of soda and I would do it for business, and he would be jealous. We only had been married a short time.

"Q. You have not stated the cause of the separa-

tion? A. We had a quarrel and he throwed me out.

"Q. In what way? A. He throwed me down the steps.

"Q. How long were you separated then? A. Three months.

"Q. What induced the quarrel? A. Because I came in the place and had a drink with his friend — he asked me to have a drink — and I had a drink of soda for business sake. We had to be polite being in that business."

At the conclusion of this evidence, the following appears from the bill of exceptions

"Thereupon the court stated that the testimony given was not satisfactory and suggested that it wanted to hear defendant, and as he had been personally served with summons and lived here, asked plaintiff's counsel if he would have him brought in by subpoena, which counsel said he would do and the case passed for that purpose to January 6, when counsel did not appear and it was passed by the court to January 13th, again to January 20th, 27th, and February 10th, on which date counsel appeared and stated he would submit the case without defendants evidence or any further testimony, and thereupon the court took the case under advisement and on February 23, 1905, dismissed the petition and case."

NORTONI, J. (after stating the facts).—It is true as a general proposition that under our laws divorce is a legal right, and when facts entitling the parties to it are made to appear on proper pleadings and service, courts have no discretion to deny it. [Deschodt v. Deschodt, 59 Mo. App. 102; Kilpatrick v. Kilpatrick, 80 Mo. App. 70; Ulrey v. Ulrey, 80 Mo. App. 48.] And it seems from the record in this case that the plaintiff adduced an abundance of competent evidence tending to support her charge of indignities; that her husband

is a vile brute of a man and persistently annoyed her with his cruel and unmanly conduct, thereby rendering her condition intolerable, etc., that she was a woman of good character who had conducted herself with kindness and affection toward him and discharged all of her wifely duties, and from the evidence alone, it would seem that the court should have granted the divorce. There are other things than the mere words of witnesses to be considered, however, in passing upon the question of the weight and value of testimony and the influence it should have upon the trial court. There is always great danger of imposition and fraud being practiced upon the court in *ex parte* divorce proceedings, and in contemplation of this recognized truth, the Legislature, in which is vested full authority in that behalf, has manifested the public policy of the State on the question by providing: "Where the proceeding shall be *ex parte*, the court shall, before it grants the divorce, require proof of the good conduct of the petitioner and be satisfied that he or she is an innocent and injured party." [Sec. 2929, R. S. 1899.] And here it is proper to say that for sufficient reasons of public policy, the State or the public, is regarded, in a limited sense, as a party to divorce suits, and if the defendant fails to plead affirmative matter which would defeat the plaintiff's action, it is always competent for the court, exercising its office in the fulfillment of a public trust, to elicit evidence tending to show that the plaintiff is not an innocent or injured party, and it is the rule that a default in a divorce proceeding admits nothing as against the public. Wherefore it was entirely proper for the court to elicit these facts, as it did. [Owen v. Owen, 48 Mo. App. 208; Moore v. Moore, 41 Mo. App. 176; 2 Bishop on Marriage and Divorce, secs. 480-498; 1 Bishop on Marriage and Divorce, sec. 78; 9 Amer. and Eng. Ency. Law (2 Ed.), 729.]

Now, it is a matter of first importance in this case,

Grenzebach v. Grenzebach.

and on which the trial court must be satisfied, that the plaintiff was not only the injured, but was an innocent party as well. It appeared from her testimony that the origin of the trouble between her and her husband was occasioned because of her going into his saloon with patrons thereof and drinking soda with them; that he became, as she said, jealous of her by reason of this conduct on her part. A man would certainly be justified in objecting to such conduct on the part of his wife, even though the saloon be his own place, and while it may have been innocent and devoid of wrongful intent, it nevertheless is conduct which does not comport with the opinion which courts usually entertain of good women, and from these admissions, we are of the opinion that the learned trial judge, as he was on his oath of office and his conscience, to find that the plaintiff was an innocent party, was justified in hesitating somewhat, notwithstanding the several witnesses who, in general terms, gave testimony that she was a good woman. The proposition squarely put is, the court was to find her an innocent party. By her own admission, the first family trouble came about because of her entering the saloon and drinking with her husband's friends. From all that appears, the husband's cruelty and vicious conduct, which resulted in rendering her condition intolerable dated from this conduct on her part. There may have been such reasons for his misbehavior thereafter not disclosed by the evidence as would show her not to be innocent, and in the very nature of things, these questions address themselves to the discretion of the trial court, and are to be weighed and determined by it, not only by the words of plaintiff and the witnesses on the stand, but from their acts, character and conduct as well. It is the peculiar privilege of the trial court to see the litigants and witnesses, to look into their eyes and take account of their character, interest, demeanor and conduct while giving testimony before it;

their manner, whether open, honest and frank or hesitating and reluctant; and thus ascertain the probability or improbability of the statements made by them. It may also survey and form an intelligent opinion with respect to the plaintiff and her story, and especially so in connection with an admission such as she made in this case, and form a tolerably accurate judgment of innocence or guilt. Sitting as it does, the trier of the facts, it is the sole judge of the credibility of the witnesses and the weight and value to be given to their testimony; and when these facts are considered, we are of the opinion that the learned trial judge did not abuse his discretion in calling upon counsel for the plaintiff to cause the husband to be subpoenaed into court in order to obtain further light from him upon the question as to whether or not the plaintiff was an innocent party. In view of the plaintiff's testimony, it was quite proper for the court to endeavor to obtain such further information in that behalf as was competent. It may be true that the facts admitted by plaintiff on the stand were not sufficient in and of themselves, in view of the testimony that she was a good woman, to preclude her right to a divorce. [Owen v. Owen, 48 Mo. App. 208; Hoffman v. Hoffman, 43 Mo. 547.] It was ample, however, to place the court on its guard, which it did, as it appears from the bill of exceptions immediately thereafter that the court announced itself not entirely satisfied with the evidence, and thereupon made the request, and counsel for plaintiff acceded thereto, agreed to cause the issuance of a subpoena and endeavor to produce the witness. Accordingly the cause was passed to January 6th, on which date counsel did not appear. The court thereupon reset the case for January 13th, awaiting counsel to produce the witness. The case was reset for January 20th, January 27th, and February 10th, on which date plaintiff's attorney appeared and stated he would submit the cause; in other words, without

explanation, declined to attempt to produce the witness which he had theretofore agreed to make an effort to do. Now it is said that our judicial tribunals sit to promote justice and to transact the business of the country, and any deceit in a proceeding avoids it and authorizes the court to dismiss the bill. [2 Bishop on Marriage and Divorce, secs. 431-432.] Under these circumstances, the circuit court, sitting with the responsibility upon it to find that the plaintiff was innocent, was no doubt justified in reaching the conclusion that although the evidence adduced was sufficient to authorize a divorce, it was being imposed upon in the case and probably deceived, and therefore dismissed the bill. Wherefore, in view of the plaintiff's admission which called forth the court's reasonable request, the accession thereto by counsel and his failure to comply therewith after ample opportunity and indulgence by the court to that end, we are not disposed to reverse the judgment. The judgment will therefore be affirmed. *Bland, P. J.,* and *Goode, J.,* concur.