JAMES D. CREIGHTON, RESPONDENT, v. MISSOURI PACIFIC RAILROAD CO., APPELLANT.—66 S. W. (2d) 980.

Kansas City Court of Appeals. December 4, 1934.

*Thomas J. Cole, L. J. Bishop* and *D. C. Chastain* for appellant.

*Kennard & Gresham* for respondent.

CAMPBELL, C.—Plaintiff seeks to recover damages for the loss of his left hand caused by the alleged negligence of defendant. He obtained a judgment in the sum of $3000, from which the defendant has appealed.

The action is based upon the Federal Employers' Liability Act.

The assignments of error are: (1) That the court erred in refusing to direct verdict for defendant; (2) in giving plaintiff's Instruction A and, (3), in refusing to discharge the jury.

It was incumbent upon plaintiff to show that at the time of injury he was engaged in interstate commerce or "with its instrumentalities," and that the negligence of the defendant was the direct cause of his injuries. Absent either element plaintiff was not entitled to a verdict.

On August 9, 1931, and continuously for several years immediately preceding that date, plaintiff was "helper hostler," working for defendant in its yards in Osawatomie, Kansas. It was the duty of plaintiff and defendant's hostler, Lucas, to service the defendant's

engines which came into its said yards. The hostler, in speaking of the work in which the plaintiff was engaged, testified:

"Q. What had you done, what were you doing at that time? A. We had just recoaled an engine and moved it down on the track ready for its trip. . . .

"Q. What did you do after you prepared that engine? A. After we prepared that engine we went back to the coal chute, there is a little house there by the coal chute and we were there a few minutes.

"Q. What did you go back there for? A. Well, it was about time for the Rainbow to get in. . . .

"Q. What did you have to do to it? A. Change engines—take the engine off the Rainbow and put one on—that was our duty.

"Q. You were waiting until the Rainbow came in? A. Yes, sir.

"Q. To perform that service? A. Yes, sir, we had instructions to not go until at least fifteen minutes. . . .

"Q. You and he (plaintiff) were waiting until the time you would get another engine? A. Yes, sir.

"Q. And I understand the other engine wasn't there? A. Yes, sir.

"Q. You belonged where you were, both of you? A. Yes, sir."

The plaintiff after preparing the engine referred to by the hostler and while awaiting the arrival of the Rainbow, one of defendant's interstate trains, went a short distance to get a drink of water. Upon his way to the coal chute he picked up a gas pipe four or five feet in length which was lying upon the ground at the side of the track, intending to throw it up an incline and onto a junk pile; that in attempting to throw the pipe one end of it struck the incline and an explosion followed, causing him to lose his left hand.

Plaintiff, though he did not see the explosive, testified that he knew from the "sound and smoke" that it was a torpedo, and that he did not know whether it was upon the ground or in the pipe.

The evidence offered by plaintiff, as well as the evidence introduced by defendant, shows that the explosive which caused plaintiff to be injured was a torpedo.

The ruling of the court in refusing to direct verdict for the defendant is assailed from many angles, the first of which is that plaintiff was not engaged in interstate commerce.

The facts bearing on the question, briefly stated, are: Plaintiff and defendant's hostler having prepared one of defendant's engines were thereupon required to await arrival in the yards of an engine engaged in interstate commerce which it was their duty to service. While waiting the plaintiff stepped aside to get a drink of water. In returning to the place of waiting he sustained injury, for which he is seeking to recover damages. The question is, was plaintiff engaged in interstate commerce during the time in which the performance of his duty required him to await the arrival of defend-

ant's interstate train for the purpose of servicing its engine? The defendant, although conceding, at least, tacitly, that the work of servicing an interstate engine is a task in interstate commerce, argues that plaintiff, while waiting to perform such task, was not within the protection of the Federal Act.

In support of that position defendant relies upon authorities, in one of which the court said:

"By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act." [Erie R. R. Company v. Welsh, 242 U. S. 303.]

The rule announced in the Welsh case does not apply to the facts here involved. In the instant case plaintiff had completed the performance of an intrastate task and was, at the time of injury, performing the duty of awaiting the arrival of his master's interstate train in order that he might service it. He was not merely expecting presently to be called upon to perform a task in interstate commerce. Duty had summoned him to wait. Waiting was his task as much as was the actual physical labor to be performed in preparing the engine. Upon the facts the case comes within the principle announced in the case of St. Louis, San Francisco & Texas Ry. Company v. Seale, 229 U. S. 156.

In the Seale case the injured employee was a yard clerk. "His duties related to both intrastate and interstate traffic, and at the time of his injury and death he was on his way through the yard to one of the tracks therein to meet an incoming freight train from Madill, Oklahoma, composed of several cars, ten of which were loaded with freight. The purpose with which he was going to the train was that of taking the numbers of the cars and otherwise performing his duties in respect of them. While so engaged he was struck and fatally injured by a switch engine, which, it is claimed, was being negligently operated by other employees in the yard. . . . The train from Oklahoma was not only an interstate train but was engaged in the movement of interstate freight, and the duty which the deceased was performing was connected with that movement, not indirectly or remotely, but directly and immediately."

We hold upon the facts in evidence plaintiff at the time of injury was engaged in interstate commerce.

The defendant insists that there was no evidence showing that it "could have detected the presence" of the torpedo in its yards. Of course, the defendant was not guilty of actionable negligence unless it knew or should in the exercise of due care have known of the presence of the torpedo. The torpedos kept by defendant in its supply house in the yards were red in color. After a torpedo was

placed upon the ground at the place of accident it presently became covered with coal dust and "looked like a lump of coal." The defendant had employees whose duty it was to keep its yards clean, to remove a torpedo if one were found and to remove all obstructions which might endanger an employee in the performance of his duties. These employees cleaned that part of the yards adjacent to the coal chute each day. One of the said employees testified that he "did not see how they (yard cleaners) could miss a torpedo for everyone knows how dangerous they are."

Plaintiff testified that after he picked up the pipe he looked at the ground which appeared to be covered with "cinders and lumps of coal and dust."

From the foregoing the trier of the fact could find that the torpedo, the explosion of which caused the injury, had been lying in defendant's yards a sufficient length of time to become covered with coal dust, and that defendant's employees, whose duty it was to keep its yards clean, had negligently failed to perform the duty enjoined upon them.

The defendant contends that plaintiff was not entitled to have the case submitted to the jury for the reason that the petition alleged that the end of the gas pipe came in contact with the explosive upon the ground, and that plaintiff testified that he did not know whether the explosive was upon the ground or in the pipe. If the proof was that the explosive was in the pipe and not upon the ground a material allegation in plaintiff's petition was disproved, but the mere fact that plaintiff did not know whether the explosive was in the pipe or upon the ground did not disprove the allegation. The evidence was that a torpedo could not be inserted into the pipe. Moreover, the defendant alleged in its answer that the explosive was upon the ground and that plaintiff voluntarily struck it with the pipe.

Counsel say "if the allegations of the plaintiff's petition are true, that explosives were commonly left upon the defendant's premises, and if the testimony of the plaintiff's witnesses, Becket and Bundy, is to be accepted, then it seems to us to follow that a risk was created which the plaintiff assumed." Plaintiff worked from six o'clock in the evening until two o'clock A. M. His duties did not require him to be on the lookout for objects which should be removed by the clean-up crew. He testified that he had not seen a torpedo lying on the ground in defendant's yards. A number of defendant's employees who worked in the yards said they had not seen a torpedo lying upon the ground. Viewing the evidence in a light most favorable to plaintiff we cannot say that he, as a matter of law, assumed the risk. [State ex rel. St. Louis-San Francisco Ry. Co. v. Fox et al., 46 S. W. (2d) 849.]

Defendant argues that plaintiff's Instruction A was erroneous for the reason that it did not require the jury to find that plaintiff

at the time of injury was engaged in interstate commerce. The instruction did not allow plaintiff to have a verdict unless the jury found that plaintiff at the time of injury "was on his way to handle an engine from Missouri" and was "preparing engines for trips upon defendant's lines from the State of Kansas into and from Missouri and other states." The defendant's instruction No. 18 in clear terms told the jury that plaintiff could not recover unless he was engaged in interstate commerce. Hence, the lack of clarity, if any, in plaintiff's said Instruction A was cured.

Plaintiff in a former suit against defendant to recover for the loss of his hand alleged in his petition that it was not customary for the defendant to allow explosives to lie upon or about the tracks or in its said yards. That suit was dismissed. The defendant insists that plaintiff is estopped by the allegations in his petition in the former suit. A litigant is conclusively bound by allegations of fact in his pleading upon which a cause is tried. [State ex rel. v. Webster Groves, 37 S. W. (2d) 905, 908.] This rule, however, does not apply to an abandoned pleading or to a pleading in another suit between the same parties for the same cause of action. It was proper in this case to receive the petition in the former suit in evidence but its allegations were not conclusive upon plaintiff in this action. [Boyer v. R. R., 293 S. W. 386.]

In the cross-examination of the plaintiff is the following:

"Q. You are not in pain now, are you? A. Not in pain all the time.

"Q. What hurts you right now? A. My stump. (Here the witness began to cry.)

"Q. That is what is making you cry here? A. No, sir.

"Q. What makes you cry? A. My family.

"Q. Have you been instructed to cry here when you got before this jury? A. No, sir."

No objection was made to the plaintiff's conduct nor was the court asked to rule upon it. Later at the trial plaintiff's wife while testifying "began to cry." Thereupon, the defendant moved the court to discharge the jury. The motion was denied. The decision of the motion was largely within the discretion of the trial court and we cannot say that the court abused its discretion or that it was its duty to peremptorily order a mistrial. We have not found reversible error in the record. The judgment is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.