Mary Melton MAY (Plaintiff), Appellant,

v.

William Nathaniel MAY (Defendant), Respondent.

No. 29407.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1956.

Joseph A. Kirkwood, St. Louis, for appellant.

Paul Brackman and Amandus Brackman, Brackman, Oetting & Brackman, Clayton, for respondent.

ELMO B. HUNTER, Special Judge.

Mary Melton May and William Nathaniel May were married on April 10, 1926, in Richmond, Virginia. By 1938 various serious conflicts between the parties had developed. Their marital difficulties increased, and on March 1, 1954, the plaintiff, Mrs. May, filed her petition for separate maintenance in the Circuit Court of the City of St. Louis, naming her husband as defendant, and charging him with numerous indignities, which, she alleged, rendered her condition in life intolerable. Among those alleged indignities were that defendant: (1) struck and beat plaintiff; (2) possessed a severe temper; (3) was constantly nagging and quarrelsome; (4) was cold and indifferent; (5) would cause plaintiff unnecessary humiliation and embarrassment; (6) accused plaintiff of being a poor housekeeper, an unfit homemaker, and a poor wife; and (7) constantly expressed desires to associate with other women. With regard to venue and jurisdiction, plaintiff alleged that "she is now a resident of the City of St. Louis, State of Missouri, and has resided in said state for more than one whole year next before the filing of this petition." She further alleged that "from and after said marriage [on April 10, 1926] she lived with said defendant as his lawful wife until on or about January 10, 1954."

On April 2, 1954, defendant filed his answer and cross bill for divorce. In his answer, defendant, after admitting the marriage and declaring that he had faithfully demeaned himself and had discharged all his duties as husband of the plaintiff, denied that he was guilty of any of the charged indignities or misconduct, and also denied that he had abandoned plaintiff or had refused or neglected to provide for her. In

his cross bill defendant charged plaintiff with numerous indignities, including that plaintiff (1) nagged at, argued with and berated defendant; (2) created public scenes when they were together; (3) seized and hid his clothing; (4) made false and malicious accusations relative to defendant's honesty and morality to the executive officers of defendant's employer; (5) on two occasions without cause had left their mutual home for seven months and eleven months, respectively; (6) falsely charged that defendant had improper associations with other women including the parties' own daughter-in-law, and had so stated to defendant, to the daughter-in-law, to their son and to many of their friends and associates; (7) had been unduly extravagant; and (8) had associated with other men. In Paragraph 1 of his cross bill, defendant alleged that he and plaintiff "except for several periods of plaintiff's continued absence, have lived together as husband and wife from and after the aforesaid date of their marriage [on April 10, 1926] until on or about the 10th day of January, 1954, at which time said parties separated". In Paragraph 2 thereof, he alleged "that defendant has resided in the State of Missouri continuously for more than one whole year next prior to the filing of this cross bill; that defendant is a resident of the City of St. Louis."

On May 4, 1955, plaintiff filed her answer to defendant's cross bill for divorce. In it she specifically denied all of the charged misconduct and indignities on her part and realleged the substance of seven of the indignities with which she had charged defendant in her petition for separate maintenance. Also in it she specifically admitted defendant's allegations of continuous Missouri residence as contained in Paragraph 2 of his cross bill for divorce and, except for the claimed several periods of plaintiff's continued absence, admitted the allegations of Paragraph 1 of his cross bill. She concluded by praying that his cross bill for divorce be dismissed.

Also on May 4, 1955, the case proceeded to trial in Division No. 15 of the Circuit Court of the City of St. Louis, before Judge David J. Murphy. Plaintiff was then represented by Mr. Frank J. Motherway of the St. Louis City bar, and defendant was represented by his present counsel. The first proceeding before Judge Murphy was the dismissal, by plaintiff, of her petition for separate maintenance. Thereafter, the trial of the cause proceeded on defendant's cross bill for divorce and plaintiff's answer thereto.

As will be discussed later in this opinion, plaintiff at no time offered any evidence. The evidence on behalf of defendant was as follows:

William May, the defendant, testified that at the time his cross bill was filed he resided in St. Louis, Missouri, and was employed by the International Shoe Company in charge of Merchant Service Division. He and Mrs. May were married April 10, 1926, in Richmond, Virginia, and one child, William, now 28, was born of the marriage. With regard to his Missouri residence, defendant testified that he had lived in the State of Missouri since 1950. This evidence will be discussed in some detail hereinafter in regard to several of plaintiff's contentions on this appeal. Defendant testified that he had treated his wife with respect, had provided her with a home, and otherwise provided for her to the best of his ability. Since 1937 or 1938 their relationship wasn't too favorable. They seemed to have drifted apart. She displayed high temper and constantly made accusations that he ran around with other women. Early in 1944 plaintiff expressed an intention to join the WAC. Defendant did not take this statement seriously and did not consent to the proposed action. Nonetheless, plaintiff joined the WAC in February, 1944. At the time she joined they were living together in Harrisburg, Virginia. About a year later and while she was still in the WAC, defendant was transferred by his company to St. Louis,

Missouri. She remained in the Army about two years. After her release from the Army, she returned to Richmond and resided with her mother during 1946, 1947, 1948, and in 1949 went to New Mexico to live with her son. In the latter part of 1950, she went to California where she lived with her son until February, 1951. She then returned to Richmond and lived there with her mother until November, 1951, when she came to St. Louis. She enrolled at Washington University night school in St. Louis. She would sit up all night and sleep in the daytime, which was disturbing to defendant. She continued with this school arrangement and conduct until May, 1952. She then went to Richmond to her mother and remained there until December 1, 1952, when she returned to St. Louis. She left again in January, 1953. All of this time defendant maintained a home in St. Louis for her, and he resided in that home. The only reason she ever gave him for her departure was her desire to live with her mother. Defendant did not ask her to leave, nor did he prevent her from leaving. All through the years he had tried to the best of his ability to provide for her, and all through the years, even though she was living apart, he had sent her sums of money sufficient to give her a good livelihood.

In October, 1953, defendant decided to have a showdown and notified her that he was giving up the apartment and offered to send her the furniture. Plaintiff then began to telephone defendant at all hours of the night and called his office. She returned to St. Louis December 25, 1953, to defendant's apartment. They lived in the apartment about three weeks. Defendant then left it about January 20, 1954. She stayed on in the apartment. A few days after the separation, plaintiff created a scene in the lobby of the hotel in the presence of a number of people and there accused defendant of income tax evasion.

In November and December, 1953, plaintiff had run up excessive bills in Richmond, Virginia, where she was living with her mother. These bills totaled $2,991.48. Thereafter, plaintiff ran up excessive bills in St. Louis totaling $3,995.33. One thousand dollars worth of the merchandise purchased by plaintiff was returned after defendant learned of their purchase. These bills were for jewelry, necklaces, bracelets, watches, expensive hosiery, lingerie, hats, shoes, and other clothing and personal items for plaintiff.

Early in 1954, plaintiff made a call to one of the vice-presidents of defendant's company that was rather embarrassing and later made two trips to the office and talked to the secretary and treasurer of his company. She also made various other calls to some of the people in the company, including defendant's immediate superior, and left a very bad impression.

Defendant also testified that within a year or two after their marriage, plaintiff had made numerous accusations of his running around with other women; that her temper was spasmodically uncontrollable, and she would throw tantrums. On Christmas of 1953, plaintiff accused defendant of being intimate with his son's wife. Defendant testified that there was no truth in these accusations; that he sees his daughter-in-law about twice a year and is on friendly terms with his son. Defendant also testified in support of other of his pleaded complaints against plaintiff.

William Randolph May, the son of plaintiff and defendant, testified that he was 28 years old and resided in Sante Fe, New Mexico. He had never heard his father raise his voice but had heard his mother raise hers quite a few times. He was in military service from 1950–1954, stationed at San Diego, California, Japan and Korea. While in Japan he had received a telephone call from his mother, advising him that his wife and father were having relations. Seven letters were introduced into evidence which he testified he had received from his mother. These letters, in varying terms, repeated this accusation against witness' wife and his father and urged witness to

return home. He returned on emergency leave the last part of January, 1954, and went to see his wife in Sante Fe. Then he went to St. Louis to see his mother and father. He discussed the accusations with his wife and with his father but not with his mother. He concluded there was nothing to the accusations. He did not ask his mother for proof of them, although she had said she had proof.

Stella May, wife of William R. May, testified that she had known plaintiff since 1949. Her visits with plaintiff were unpleasant because plaintiff didn't like her. Plaintiff was very nasty when the witness told plaintiff of her marriage to her son, but Mr. May never said an unkind word to her in his life. A short time after the witness' marriage, plaintiff, at the invitation of her son, came to live with them in Hollywood, California. The son was recalled to the Navy on December 8, 1950. Witness and plaintiff remained in Hollywood until January 5th, and then plaintiff moved in with witness and her husband in a hotel room in San Diego, California, and stayed there until February. Witness related several incidents of plaintiff's conduct concerning male acquaintances, including one occasion when plaintiff, after a few drinks at a bar, became friendly with two sailors, drinking with them, and later that evening dating one of them and necking and drinking with him. Witness visited plaintiff and defendant just before December 25, 1953, and observed altercations between them in which plaintiff would make accusations to defendant in a screaming manner. On one such occasion plaintiff went on a screaming binge, sat up all night long, cussed him, accused him, hollered at him and screamed at him. In return, defendant did nothing. Plaintiff had always been very hot tempered, vicious and malicious. Plaintiff had made digs and nasty remarks to witness about defendant, especially about him running around with women. She had written several letters to witness in September and October of 1953, in which plaintiff accused defendant of running around with other women, and stated that she was going to divorce him. Two letters from plaintiff to witness were introduced into evidence. In these letters containing filthy and obscene language, plaintiff accused witness of having had sexual intimacies with defendant. Plaintiff sent several letters of similar tenor to the parents of witness. Stella May denied that she had ever had any intimate relations with her father-in-law or had conducted herself improperly.

Defendant's sister, Mrs. David Connor, testified that plaintiff had telephoned her in the early part of 1954 and accused the defendant of having intimate relations with his daughter-in-law. Mrs. Connor also testified to several occasions when plaintiff had been drinking with men friends in her presence. While Mrs. Connor was living with plaintiff and defendant in 1938 and 1939 in Harrisburg, Virginia, plaintiff and witness made several trips to Staunton, Virginia, to see one of plaintiff's male friends at his place of business. They would have a few drinks and then plaintiff and this man would go in the back office while witness remained in the front office. On one occasion she saw them sitting face to face on the commode.

Mr. Forwalder, defendant's immediate superior, testified that he had received two or three telephone calls from the plaintiff asking whether or not it was necessary for the defendant to travel as much as he did. He also testified that defendant's reputation among his friends and associates for truthfulness and morality was very good.

The result of the trial was that on June 8, 1955, the court found that the defendant was an innocent and injured party and entitled to the divorce. A decree of divorce was entered accordingly.

On June 17, 1955, plaintiff filed her motion for new trial, which was overruled on July 5, 1955. This appeal followed.

 While in this state an action for divorce is a statutory suit at law and not a

suit in equity, it does, nevertheless, partake of the nature of a suit in equity and is triable as such in the Circuit Court, and de novo as such on appeal. Schulte v. Schulte, Mo.Sup., 140 S.W.2d 51; Couplin v. Couplin, Mo.App., 121 S.W.2d 186; O'Neil v. O'Neil, Mo.App., 264 S.W. 61. On appeal it is our duty to consider, weigh and evaluate all of the competent evidence tending to prove or refute the essential factual issues and reach our own findings. In so doing we are not bound by the trial court's findings but do usually accord proper deference to them, particularly where the credibility of witnesses who appeared before it is challenged. We do not hesitate to correct any errors the trial court may have made. Dallas v. Dallas, Mo.App., 233 S.W. 2d 738; Clemens v. Clemens, 361 Mo. 485, 235 S.W.2d 342; Meyer v. Meyer, Mo.Sup., 285 S.W.2d 694.

Plaintiff contends that the trial court erred in failing to dismiss the cross bill for divorce because the court lacked jurisdiction (1) in that neither plaintiff nor defendant was a resident of Missouri for the required length of time, and (2) because the defendant by judicial admission had acknowledged his residence to be in a state other than Missouri.

In this connection it is evident from the allegations contained in his cross bill and testimony that defendant has relied upon compliance with that part of the applicable statute, Section 452.050 RSMo 1949, V.A.M.S., which provides that "No person shall be entitled to a divorce * * * who has not resided within the state one whole year next before filing of the petition * * *." During the trial defendant testified as follows:

"Q. At the time you filed your cross bill for divorce where did you reside? A. 5316 Pershing Avenue, St. Louis, Missouri. * * *

"Q. How long have you lived in the State of Missouri, Mr. May? A. Since 1950.

"Q. You have lived here continuously since 1950? A. Yes. I worked out of here for the entire ten-year period.

"Q. You traveled extensively for the company but this has been your home? A. Yes.

"Q. During the 28 years of married life—is that correct? A. That's right."

On cross-examination of defendant:

"Q. Mr. May, at the time she joined the WAC were you living together? A. Yes, sir.

"Q. Where? A. Harrisburg, Virginia. * * *

"Q. Had you been living apart prior to that time? A. No, sir, we had been living together right along except the short period she went to her home for a month or so during the year.

"Q. Where were you living at that time? A. Harrisburg, Virginia. * * *

"Q. When she joined the WAC's were you traveling? A. No. I was permanently stationed in Harrisburg, Virginia."

Again, defendant testified:

"A. When she entered the Army, of course that left me alone. I continued to maintain my present residence at that time, and I lived there for approximately a year after she went in the Army and then I was transferred.

"Q. To St. Louis? A. Yes.

"Q. And when did you establish a home in St. Louis for her? A. I established a home in St. Louis in September, 19 and 51. She didn't arrive until two months after I set up the home, but I furnished it and had it set up for her.

"Q. She came here then? A. Yes; I believe she arrived here the latter part of October, or the 1st of November, I'm not quite sure of the date. * * *

"Q. Your residence has been here how long? A. Let's see, since—I would say my residence has been here since 1946, about that time."

Other testimony and exhibits in this case tend to corroborate defendant's statement that he had continuously resided in St. Louis, Missouri, at least since 1951.

■ It is the law that if defendant's cross bill properly alleged that defendant was a resident of the state and had resided therein for one whole year next before the filing of the cross bill, and if defendant made sufficient proof in support of that allegation, the jurisdictional (residence) requirements of the statute have been complied with. Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838; Pike v. Pike, 239 Mo.App. 655, 193 S.W.2d 637; Arndt v. Arndt, 177 Mo.App. 420, 163 S.W. 282. It is our opinion that the evidence adduced on behalf of defendant is, in the absence of other infirmity, sufficient to sustain and justify the trial court's finding that defendant had resided within the state one whole year next before the filing of his cross bill.

However, plaintiff further contends that defendant by judicial admission had acknowledged his residence to be in a state other than Missouri and was irrevocably bound by that admission. Plaintiff bases her contention on her own statement that the statutes of New Mexico require a year's residence in that state prior to the filing of a divorce action. She reasons that defendant, by admitting that he had filed a

suit for divorce in the State of New Mexico about seven or eight months subsequent to the time he filed his cross bill in this action in Missouri, without satisfactorily explaining same, in effect admitted he was a resident of New Mexico at the time he filed his cross bill and for some months before.

The pertinent evidence is brief:

"Q. I'll ask you if you filed a divorce petition in November, or September, of 1954, out in Santa Fe, New Mexico? * * * A. Yes; I did.

"Q. Against your wife? A. That's right. * * *

"Q. In November of 1954 were you a resident of the City of St. Louis? A. Yes. * * *

"Q. And in the fall of that year [1954] you went to Santa Fe, New Mexico, and filed a suit for divorce there? A. Yes; I believe it was in the month of November. I don't have the date available."

A paper marked as Plaintiff's Exhibit A was shown to defendant during his cross examination.[1] With reference to it, defendant stated, "This is a petition issued in Santa Fe, New Mexico." This paper was neither offered nor received in evidence, nor was the alleged petition in the New Mexico action or a copy thereof ever offered in evidence. The appropriate New Mexico statute was never offered in evidence, nor has plaintiff pleaded it or indicated in her pleadings any reliance upon the laws of New Mexico in her defense to this suit.

We proceed to consider plaintiff's contention that defendant has made a binding

---

1. Plaintiff's Exhibit A, which has been provided to this Court appears to be an alias summons with an "Amended Complaint" attached. It is not signed by defendant, but bears the purported signature of his Santa Fe, New Mexico, attorney. The only reference in it to defendant's residence is: "Comes now the plaintiff, by his attorney, and for his cause of action against the defendant says and alleges: I. That Plaintiff is a resident of the County of Santa Fe, State of New Mexico." It prays for a divorce from bed and board and for division of property and debts.

judicial admission. In the past there has been considerable confusion of nomenclature regarding types of admissions with resultant confusion as to their proper legal effect.

■ A true judicial admission is an admission made in court or preparatory to trial, by a party or his attorney, which concedes for the purposes of that particular trial the truth of some alleged fact so that one party need offer no evidence to prove it, and the other party ordinarily is not allowed to disprove it. It removes the proposition in question from the field of disputed issues in the particular case wherein it is made. It is a substitute for evidence in the sense that it does away with the need for evidence on that subject in that cause. 4 Wigmore on Evidence, 3rd Edition 49, Sec. 1065; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Bohle v. Sternfels, Mo.Sup., 261 S.W. 2d 936; Stockton v. Tester, Mo.App., 273 S.W.2d 783. The true judicial admission is sharply distinguished from the ordinary or quasi admission, which is usually some form of self-contradiction and which is merely an item of evidence, available against the party on the same theory any self-contradiction is available against a witness. The person whose act or utterance it is may nonetheless proceed with his proof in denial of its correctness. It is merely an inconsistency which discredits, in greater or lesser degree, his present claim and his other evidence. It is to be considered along with the other evidence and circumstances of the case. Thus, the moment one seeks to use admissions made in other litigation, even though between the same parties, he must resort to them merely as ordinary or quasi admissions—i. e., ordinary statements or acts which now appear to tell against the party who made them or did them. Creighton v. Missouri Pacific Railroad Co., 229 Mo.App. 325, 66 S.W.2d 980, certiorari denied, 293 U.S. 558, 55 S.Ct. 70, 79 L.Ed. 659. Assuming, but not deciding, that we will take judicial notice of the appropriate statute of the State of New Mexico concerning that state's residential requirements in divorce proceedings, nonetheless defendant's testimony that he filed a petition for divorce in New Mexico some seven or eight months after he filed his cross bill in Missouri is not a judicial admission that he was a resident of the State of New Mexico on April 2, 1954, the date he filed his cross bill. Nor is it a judicial admission that he had not been a resident of the State of Missouri for the lawfully required time. It was at most an ordinary or quasi admission to be implied from his stated conduct of filing a petition for divorce in New Mexico. Whatever probative value it may have, as being possibly inconsistent with his other testimony concerning his Missouri residence, was before the trial judge, who having heard it, must be presumed to have weighed it in with the other testimony and evidence on the subject. The question of whether or not defendant met the necessary residential requirements, as required by our statute in divorce actions, is a question of fact to be determined in the first instance by the trial Court. Under the particular facts and circumstances of this case, we believe the trial Court reached the correct conclusion on this question and we, therefore, would not be justified in disturbing his findings thereon. Andris v. Andris, 343 Mo. 1162, 125 S.W.2d 38; Winkler v. Winkler, 273 Mo. 60, 199 S.W. 981; Richardson v. Richardson, Mo.App., 270 S.W.2d 68.

■ Plaintiff next contends that the trial Court erred in failing to go outside the record to determine if any deceit had been practiced upon it in the proceedings. She argues that defendant deceived either the Courts of Missouri or attempted to deceive the Courts of New Mexico, and, in the absence of a satisfactory explanation as to why a suit for divorce was instituted in New Mexico, defendant must be presumed to have practiced fraud on the Missouri Court in obtaining his divorce decree. Plaintiff makes this argument even though she, in her answer to defendant's cross bill, specifically admitted his al-

legation that he had resided in Missouri the required time. Further, she selected the. Missouri Court as the proper forum for the filing of her petition for separate maintenance in which she alleged that she had resided in Missouri for the required time and that she and defendant had lived together during that time. At the time she made those allegations, she and defendant were in completely adversary positions with no suggestion of collusion between them. Thus, plaintiff is most inconsistent in her present contention and her other actions in this cause. Yet we must recognize that in divorce proceedings there are three parties; namely, the plaintiff, the defendant, and, impliedly, the state. Koslow v. Taylor, 356 Mo. 755, 203 S.W.2d 433; Hartle v. Hartle, Mo.App., 184 S.W.2d 786; Willis v. Willis, Mo.App., 274 S.W.2d 621. This is so because the state, or public, has a vital interest in the marriage status, its continuance and its dissolution. Marriage is acknowledged to be more than a mere personal contract between two parties. It is a sacred relation that forms a material part of the very foundation of civilized society and without which society could not properly exist. Public policy, good morals, and the interests of society require that the marriage relation should be surrounded with every safeguard and its severance be allowed only in the manner and only for the causes specified by law. It is clear duty of the Court to protect the state or public's interest in the marriage, and in order to do so, the Court itself may elicit testimony from a witness, cause witnesses of the Court's own choosing to be subpoenaed, or in other proper ways cause or allow evidence not adduced by the parties to be brought before it. Cherry v. Cherry, 225 Mo.App. 998, 35 S.W.2d 659; Grenzebach v. Grenzebach, 118 Mo.App. 280, 94 S.W. 567.

Because of this high interest of the state in divorce proceedings and the duty of the Court to protect this interest, we have carefully reviewed the entire record in the light of plaintiff's contention. Most of the pertinent facts have been discussed already,

and we pause only to emphasize that during the trial the Court had been informed of defendant's action of filing a petition for divorce in New Mexico. The trial Court also had before it all of the testimony and evidence of defendant and his witnesses on the subject of defendant's residence. Plaintiff was present during most of the trial, and her counsel conducted a vigorous cross-examination of defendant and his witnesses. Taking into consideration all of the circumstances of this particular case, and acknowledging the large discretion that the trial Court must be allowed as to what, if anything, it should do in a particular case to fully protect the public's interest in the divorce proceeding, and to be assured that the divorce is obtained only upon the satisfaction of all the legal requirements therefor, we do not believe that the trial Court committed any error or was guilty of any neglect of duty. Each case in this regard must be judged upon its own particular facts.

Plaintiff next asks that this Appellate Court, in the public interest, direct an inquiry into the matters of defense in this case. Feeling as we do that the trial Court sufficiently and adequately represented the public's interest in this case, we are not persuaded that anything further is called for by this Court.

■■■■■ Plaintiff's final contention is that this Court should direct such inquiry because plaintiff was of the opinion that she had discharged her attorney before the trial was completed and consequently thought it unnecessary to give heed to any of his letters advising her when to be in Court, and thus she failed to appear to testify in her own behalf or to present any defense. In this connection it is helpful to review plaintiff's actions. Suit for separate maintenance was filed by plaintiff on March 1, 1954. Defendant filed his answer and cross bill on April 2, 1954. About the time of the first setting of this cause, plaintiff discharged her first attorney and employed her second attorney, Mr. Motherway, and had

the case continued. On the day the case came to trial, fourteen months after it was filed, plaintiff dismissed her petition and for the first time filed her answer to defendant's cross bill. ·On the second day of the trial, plaintiff was late, thus delaying the trial. When defendant's evidence in support of his cross bill was concluded, plaintiff offered no evidence and the cause was taken by the Court as finally submitted. Nonetheless, after an informal visit to the Court by plaintiff, on June 1, 1955, the Court of its own motion set aside the submission and reset the case for June 8, 1955, in order to receive plaintiff's evidence. Plaintiff's counsel, Mr. Motherway, notified plaintiff by letter that the Court had set the cause for trial for submission of her evidence on June 8, 1955, and for her to be present at that time with her evidence and witnesses. She received that letter on June 2, 1955. Meanwhile, by letter, plaintiff had requested Mr. Motherway to withdraw. This letter was received by him on June 2, 1955. Presumably the two letters crossed each other in the mail. On receipt of her letter, Mr. Motherway did request leave of Court to withdraw as plaintiff's counsel, but the Court refused to allow the withdrawal at that stage of the trial and ordered the cause to proceed. Plaintiff failed to appear on June 8, 1955, and her attorney, who was present, did not know why she failed to appear. The Court then ·considered the cause as again submitted and made its findings· and entered its decree o'f divorce to defendant on his cross bill. Under these circumstances, we hold that plaintiff has had her ·day in Court. She was accorded much consideration by the trial Court, who, of his own motion, set aside one submission of the cause to give her a second opportunity to present her defense. No one deprived· plaintiff of her right to introduce evidence. On the contrary, so far as the record indicates, she simply elected to remain away, and neither gave counsel nor the Court her reason therefor. Defendant, having produced sufficient proof in support of the allegations of his cross bill, is entitled to his decree of divorce. Willis v. Willis, Mo.App., 274 S.W.2d 621.

The judgment is affirmed.

ANDERSON, P. J., and MATTHES, J., concur.