BYRON J. MYERS, INC., a Corporation,
d/b/a Economy Lumber & Hardware,
Plaintiff-Respondent,

v.

Claude A. BRADBURY and Patricia A.
Bradbury, Husband and Wife,
Defendants,

and

The Farmers Bank of Stover,
Defendant-Appellant.

No. KCD 30546.

Missouri Court of Appeals,
Western District.

Feb. 4, 1980.

Rehearing Denied March 3, 1980.

Garrett R. Crouch, Charles B. Fitzgerald, Warrensburg, for defendant-appellant.

Edgar S. Carroll, Warrensburg, for plaintiff-respondent.

Before WASSERSTROM, C. J., Presiding, WELBORN and MASON, Special Judges.

DONALD L. MASON, Special Judge.

Trial was had of this court tried case on July 12, 1978, and on September 30, 1978, a money judgment in the amount of $9,717.07 was entered against the defendants Bradbury and impressed as a mechanic's lien against the real estate owned by the Bradburys in which the defendant The Farmers Bank of Stover had an equitable interest. Only The Farmers Bank of Stover appeals from the judgment entered, urging three points for reversal. We will separately discuss each point and the evidence pertaining thereto.

### I.

The Bank asserts that plaintiff is not entitled to have its judgment impressed as a mechanic's lien on the real estate as plaintiff failed to offer evidence at trial of the filing of its lien as required by § 429.-080, RSMo 1978. That statute requires the person or business organization seeking to impose a lien to file with the circuit clerk, within specified time limits, a just and true account of the net amounts due. The gist of appellant's argument is that plaintiff did not prove at trial the date of filing of the lien statement with the circuit clerk. Parenthetically, we do not perceive that this first point encompasses the contention that the lien statement filed was not a just and

true account and, therefore, fatal to a mechanic's lien judgment, *Bernard v. Merrick*, 549 S.W.2d 561 (Mo.App.1977), as no supportive facts or citation of authorities are contained in appellant's brief as required by Rule 84.04, *State ex rel. Beeler v. City of Raytown*, 453 S.W.2d 672 (Mo.App.1970).

Appellant relies heavily on *Landers Lumber & Cement Co. v. Short*, 225 Mo.App. 416, 37 S.W.2d 981 (1931) which declares: "The foundation of a mechanics lien is the lien statement filed with the clerk of the circuit court of the county where the property is located. Unless this lien statement, which must be in substantial compliance with the provisions of the statute, is filed as required by the statute, no lien attaches. In this case the petition of plaintiff alleged all the facts required to be alleged, including the allegation that a lien claim was duly filed. The answer of the property owner was a general denial. This placed on plaintiff the burden of proving all the facts necessary to be shown to entitle it to a lien. One essential fact necessary to be proven was the fact that a proper lien claim was duly filed. *This could only be done by placing in evidence the lien claim itself. That was not done in this case, and, without that proof, plaintiff failed to make a case.*" (emphasis by appellant). In the absence of the admission hereafter discussed appellant would prevail as plaintiff did not introduce the lien statement filed in the circuit clerk's office on February 1, 1977, the same day plaintiff also filed his original petition, into evidence, *Wilson v. Berning*, 293 S.W.2d 151 (Mo.App.1956).

Immediately preceding the commencement of the formal trial, the court and counsel were discussing matters pertaining to the trial and the admission of exhibits, and the following colloquy is recorded:

"MR. CARROLL: Now I was hopeful, Judge, that we could get some of the—I consider the knit-picking things out of the way. The date of the filing of the mechanic's lien, the date on my copy here shows February 1st, 1977. I see Mr. Crouch has the Clerk's book, maybe he will agree it was filed on that date?

"MR. FITZGERALD: Your Honor, we of course feel that the showing of this is only competent and admissible to show that the statutory procedures was followed; that is not to show that there was a contract and—of a contract price or any credits or extras or time of collection or charges or date of accrual. Now if it is offered to show that the statutory procedure was followed, I have no objection.

"THE COURT: That will be admitted for that purpose."

"A true judicial admission is an admission made in court or preparatory to trial, by a party or his attorney, which concedes for the purposes of that particular trial the truth of some alleged fact so that one party need offer no evidence to prove it, and the other party ordinarily is not allowed to disprove it. It removes the proposition in question from the field of disputed issues in the particular case wherein it is made. It is substitute for evidence in the sense that it does away with the need for evidence on that subject in that cause. 4 Wigmore on Evidence, 3rd Edition 49, Sec. 1065; *Maltz v. Jackoway-Katz Cap Co.*, 336 Mo. 1000, 82 S.W.2d 909; *Bohle v. Sternfels*, Mo., 261 S.W.2d 936; *Stockton v. Tester*, Mo.App., 273 S.W.2d 783." *May v. May*, 294 S.W.2d 627, 634 (Mo.App.1956), and the trial court may accept such admissions, *Sonken-Galamba Corporation v. Missouri Pac. R. Co.*, 225 Mo.App. 1066, 40 S.W.2d 524 (1931). See also *State ex rel. St. Louis Basket & Box Co. v. Reynolds*, 284 Mo. 372, 224 S.W. 401 (1920); *Wehrli v. Wabash Railroad Co.*, 315 S.W.2d 765 (Mo.1958); *Sears, Roebuck and Co. v. Hupert*, 352 S.W.2d 382 (Mo.App. 1961); *General Motors Acceptance Corp. v. Vanausdall*, 241 Mo.App. 499, 249 S.W.2d 1003 (1952); *Hays v. Missouri Pacific Railroad Company*, 304 S.W.2d 800 (Mo.1957). The clarity of appellant's counsel's statement, and the abundance of case authority, necessitates our adverse ruling on this point.

## II.

An exposition of the facts will place appellant's second point in proper context.

On December 20, 1975, the Bradburys purchased a business building, and the real estate upon which it was constructed, in the City of Warrensburg for the sum of $25,-000.00. It was known by the Bradburys, and the appealing defendant, that extensive renovation of the building would be necessary to change the configuration to suit the needs of a proposed tenant. To effectuate the purchase and the renovation the Bradburys executed their promissory note in the sum of $35,000.00 in favor of The Farmers Bank of Stover, the note being dated December 20, 1975. On the same date they executed a deed of trust on the purchased real estate to secure the payment of the note. In addition the Bradburys executed an assignment of rents document. The bank immediately disbursed $25,000.00 to complete the purchase and withheld the remaining $10,000.00 until March 10, 1976, when a disbursement in that amount was made to Bradbury. It was on this last date that plaintiff first furnished materials for the remodeling of the building which was being accomplished by Bradbury. Between March 10, 1976, and June 4, 1976, plaintiff furnished materials on this job site with regularity. Plaintiff had previously furnished materials to defendants Bradbury for many construction projects, with plaintiff separately numbering each project. The project in question was numbered 84. The renovation of the building for office space progressed and the proposed tenant took possession in the middle of June 1976. A written lease agreement was entered into between the tenant and the Bradburys on September 9, 1976. As mentioned, these rental payments had been previously assigned to the bank as further security for the payment of the note. Except for some trim work and electrical work, the renovation was thought to be completed when the tenant took possession of the premises.

The purchased building had been a service station which necessitated extensive renovation for use as office space for the tenant accounting firm. The renovative work included the complete replacement of the roof with plywood and a cold application of rolled roofing material sealed to the

brick parapet wall. A leak developed in the roof in the fall rainy season which was repaired by defendant Bradbury. In January 1977, further leaks developed where the roof joined the parapet wall which the tenant reported to the lessor. Bradbury had discontinued his construction activities by this time and requested plaintiff to send an employee to make the repairs. On January 26, 1977, plaintiff's employee went to the leased premises and accomplished the repairs by the application of five gallons of aluminum paint to act as a sealant where the roofing material joined the parapet. This was a necessary procedure in this type of construction, which had not previously been done. The total materials furnished, there being no charge for labor, was slightly more than thirty dollars and were the first materials that had been furnished by plaintiff on this job since June 4, 1976. With this factual background appellant contends the material furnished in January 1977 was under a separate contract, was not a continuation of the original renovation, and the lien claim filed on February 1, 1977, was not timely for the materials furnished on or prior to June 4, 1976. Before discussing this second point, and the third point, a delineation of additional facts is in order.

When the appellant made the loan, its loan officer knew the type of building being purchased, the identity of the proposed tenant and had a copy of the proposed lease, the general nature of the remodeling work that would be undertaken, and that the cost of remodeling would approximate $18,-000.00. Although the appellant disbursed the original $10,000.00 in loan funds directly to Bradbury, a $2,000.00 additional unsecured loan made in early May 1977 was disbursed directly to materialmen who had furnished materials and supplies for the remodeling project.

The plaintiff established a practice of sending informational billings each month to Bradbury on each project that was ongoing. When each project was completed and Bradbury was paid, he would pay plaintiff for materials furnished on that particular job. Plaintiff billed Bradbury for Project 84 for materials furnished through June 4,

1976, which was never paid. With the materials furnished in January 1977, $30.37, the total cost of materials was $9,717.07.

The citation of authorities submitted by both parties include *E. R. Darlington Lumber Co. v. James T. Smith Building Co.*, 134 Mo.App. 316, 114 S.W. 77 (1908); *Badger Lumber Co. v. W. F. Lyons Ice & Power Co.*, 174 Mo.App. 414, 160 S.W. 49 (1913); and *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510 (Mo.App.1972). We consider these cases supportive of the judgment. In *Darlington* the trial court entered a money judgment for the materials furnished but directed a verdict that a lien could not attach to the real estate. In that case materials were furnished with regularity during the period from January 18, 1904, to December 9, 1904. No materials were furnished thereafter until June 6, 1905. After reviewing the evidence the St. Louis Court of Appeals reversed and remanded stating, "It was for the jury to say whether or not the account was completed on December 9, 1904, and the indebtedness then accrued, or whether the item of June 6, 1905, was furnished on the continuing account, in accord with the intention of the parties under the original contract," at 79. In *Badger* the trial court, without a jury, entered money judgment but refused to decree a lien on the real property. The Kansas City Court of Appeals, after reviewing the evidence, reversed and remanded with directions to enforce the judgment as a lien. In this case materials were furnished with repetitive regularity during the period from September 3, 1908, to May 3, 1909. The next materials were furnished on October 9th and 12th, 1909. In *Trout's* the contractor did sandblasting work, on a running account basis, from April 11, 1967, to May 1, 1967. On the last date he suspended his work on the contract because of nonpayment. On July 14, 1967, the contractor returned to the work to apply four gallons of silicone to the brickwork to stop leaks. This was a waterproofing operation which is usually performed after sandblasting and tuck-pointing the brick.

In each of these three cases, as in the case under consideration, the timely filing of the lien claim had to be determined from the latest date materials were furnished or work performed. In each of the three cited cases the result reached, i. e., attaching a lien to enforce the judgment, was premised on the facts extant and the general legal premises more succinctly explicated in *J. R. Meade Co. v. Forward Construction Company*, 526 S.W.2d 21 (Mo.App.1975), l.c. 32:

> "A running account is a mutual account between buyer and seller, to which charges and credits are made as materials are sold or paid for. Unless there is evidence to show a separate and distinct contract as to the last items, the account will be considered a running account and relates back to the original contract. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510, 514 (Mo.App.1972). Once a running account is established, the mere lapse of time between the items 'is not sufficient to commence the running of the mechanic's lien periods of limitation. Nor is it significant that the last item or labor may be a small item.' *Trout's Investments, Inc. v. Davis*, supra."

■ The facts in *Trout's* are substantially analogous to our case. It will be recalled that the renovation work required the replacement of the roof and that a leak developed in September 1976, which was repaired by Bradbury. When further roof leaks developed in January 1977, the plaintiff, at the request of the lessor, dispatched a workman to apply five gallons of aluminum paint as a sealant, which should have been done, but had not been done, when the roof was rebuilt. By the terms of the lease agreement the lessor was required to renovate, remodel and prepare the leased premises to accommodate the lessee in the use of the premises. The trial court, as the trier of the facts, made findings of facts that the roof had not been properly constructed by the failure to apply the aluminum paint as a sealant and that the materials furnished were all part of the original renovation project. Our scrutiny of the transcript supports the efficacy of those findings.

III.

Lastly, the appellant contends the court erred in attaching a lien to enforce the judgment as all the materials furnished were subsequent to the deed of trust creating appellant's interest and, therefore, plaintiff's lien would not be superior to appellant's interest, as ordered by the court, but would be subordinate to appellant's interest. It is not necessary that we reiterate or expand on the facts already stated at length. In their briefs the parties again tread on common ground by citing the cases of *Trout's Investments, Inc. v. Davis, supra; Magidson v. Stern*, 235 Mo.App. 1039, 148 S.W.2d 144 (1941); and *Jefferson County Lumber Co. v. Robinson*, 121 S.W.2d 209 (Mo.App.1938) in support of their adverse positions. We need not recite the facts in these cases to declare that these cases are consonant with the judgment herein entered. Suffice it to state that in each case the mechanic's lien was declared to be superior to the lien of the mortgage holder.

■ The trial judge found from the facts and declared that the appellant had waived its right to a superior lien, and was estopped from asserting its priority position. That the mortgagee can waive its superior position and, thereafter, be estopped from asserting its priority, is a correct declaration of the law, *Trout's Investments, Inc. v. Davis, supra; H. B. Deal Const. Co. v. Labor Discount Center, Inc.*, 418 S.W.2d 940 (Mo.1967). There is no basis for our disturbing this finding of fact or declaration of law.

■ Since the effective date of Rule 73.01, January 1, 1975, and the explanation of the parameters of that rule in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), appellate review of court tried cases is restricted to determining whether the judgment entered is supported by substantial evidence, is not against the weight of the evidence and correctly declares and applies the law. Should these factors be present then the judgment is to be affirmed. We are further guided by the admonition that a judgment should not be set aside as against

the weight of the evidence except with caution and with a firm belief that the judgment is wrong. The judgment herein entered is supported by substantial evidence, is not against the weight of the evidence, correctly declared and applied the law, and was correct, and is therefore affirmed.

All concur.