**N. B. HARTY GENERAL CONTRACTORS, INC., Plaintiff-Appellant,**

v.

**WEST PLAINS BRIDGE AND GRADING COMPANY, INC., Defendant-Respondent.**

**No. 11397.**

Missouri Court of Appeals,
Southern District,
Division One.

April 18, 1980.

Joe Welborn, Briney, Welborn & Spain, Bloomfield, for plaintiff-appellant.

Harold L. Henry, Henry, Henry & Henry, West Plains, for defendant-respondent.

PREWITT, Judge.

Plaintiff appeals from an adverse judgment in this jury waived case. Plaintiff and defendant entered into a contract and plaintiff contends that defendant refused to pay it the full amount the contract required. The trial court's interpretation of the contract was adverse to plaintiff and judgment was entered in favor of defendant.

The defendant submitted a successful bid and thereafter contracted with the Missouri Highway Department to build a bridge. This construction necessitated excavation of dirt and rock. Plaintiff and defendant entered into a written "Subcontract Agreement" by which plaintiff was to do the drilling and blasting of the "Class C excavation" on the project. Defendant was to remove the material after the blasting. The subcontract referred to plaintiff as "Harty" and defendant as "West Plains". After referring to defendant's contract with the Highway Department, the subcontract stated:

> Now, therefore, the said WEST PLAINS does hereby sublet to said *HARTY* the following items of the contract between the State and WEST PLAINS at the unit prices stated in the following schedule;

| NO. | DESCRIPTION | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| 203 20.00 | Class C Excavation (Drilling) O.C. | 20,014 C.Y. | @ $1 63 | $32,622.82 |

"(Drilling)" was inserted in his handwriting by Oakley Carte, defendant's president, before the agreement was sent to plaintiff. It is his initials that appear immediately under that word. The contract between plaintiff and defendant makes no other reference to "Class C Excavation".

The agreement between defendant and the Highway Department was apparently not introduced in evidence but testimony

established that it contained two classifications of excavation work. "Class A" excavation is dirt removal and "Class C" excavation is removal of rock larger than six inches from any one point to another. In its bid documents and in defendant's contract with it, the Highway Department estimated that there would be 20,014 cubic yards of Class C excavation on the project. The contract between plaintiff and defendant also incorporated this figure but they agree that it was an estimate of the volume of rock and they knew that there could be "overruns and underruns".

Defendant excavated with earth moving equipment without drilling and blasting until it reached "solid rock" at which time plaintiff commenced drilling and blasting. Plaintiff drilled and blasted toward the removal of 10,194 cubic yards of solid rock. In defendant's removal by earth moving equipment "percentage rock" was discovered. It is described as a mixture of dirt and rock that is more difficult to remove than dirt. Percentage rock could be drilled and blasted but here it was not necessary to do so. Apparently the discovery of percentage rock was not contemplated and some evidence indicates it was unusual. Plaintiff's president stated that he had been in the drilling and blasting business for 20 years and this was the second time he had ever encountered percentage rock. The district construction engineer for the Highway Department stated that its estimate of 20,014 cubic yards of Class C excavation did not include percentage rock, but once you "percentage it" it becomes a part of Class C excavation.

For the purposes of payment to the defendant, the Highway Department applied the rock portion of the percentage rock to Class C excavation and the dirt portion to Class A. On this project there were three different areas of percentage rock. One was classified as 30% rock and 70% dirt, one 50% rock and 50% dirt and one 60% rock and 40% dirt. Defendant was paid for 28,388 cubic yards of Class C excavation. That consisted of 10,194 cubic yards of solid rock which was drilled and blasted by plaintiff, and for which plaintiff was paid, and 18,194

cubic yards which was that portion of percentage rock determined by the Highway Department to be rock. The dispute is whether plaintiff should be paid for this latter 18,194 cubic yards of rock. During the job no protest was made by plaintiff that it should have been allowed to remove the percentage rock. The dispute as to the payment arose after the job was completed.

All three of plaintiff's points relied on contend that plaintiff is entitled to recover because he was prevented from drilling and blasting the percentage rock. The trial court found that the contract between plaintiff and defendant did not contemplate that plaintiff would be paid for excavation that did not require drilling and blasting. This percentage rock did not. If the trial court's interpretation is correct, then all of plaintiff's contentions must be denied.

Plaintiff contends that it was entitled to be paid based upon the amount of Class C excavation paid defendant by the Highway Department, and that it could have drilled and blasted the percentage rock. The trial court interpreted the contract to provide that plaintiff was only entitled to be paid for the Class C excavation that it drilled and blasted and not for all that was allocated to Class C in payment under defendant's contract with the Highway Department. The trial court determined that the performance of plaintiff under its subcontract was different from that required of defendant under its primary contract and that the parties to the subcontract were aware of this at the time their contract was made. The trial judge found that "plaintiff held no reasonable expectation that it was to be paid for drilling and blasting of rock to be removed by earth moving equipment".

■■■ The cardinal rule in the interpretation of a contract is to determine the intention of the parties. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Under the facts before us, we believe that the contract is uncertain as to how the amount of payment to plaintiff is determined. When an ambiguity exists, the agreement is to be

given a construction which will reflect the real intention of the parties, and, in doing so, the court may consider the circumstances surrounding the execution of the contract. *In re Marriage of Buchmiller*, 566 S.W.2d 256, 259–260 (Mo.App.1978). To determine the mutual intent of the parties the court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution, and other external circumstances which cast light on the intention of the parties so long as the evidence is not contradictory or inconsistent with the contract's terms. *Grantham v. Rockhurst University*, 563 S.W.2d 147, 150 (Mo.App.1978).

■ Defendant contends that "(Drilling)" meant that plaintiff would only be paid for that part of Class C excavation that it drilled and blasted. Plaintiff contends the insertion was only to show that plaintiff did drilling and blasting and not removal. Plaintiff claims that as defendant's president inserted "(Drilling)" and as defendant otherwise prepared the contract, that it should be construed against defendant. That rule of construction is to be applied only when other means of construction fail. *Guild Management Co. v. Oxenhandler*, 541 S.W.2d 687, 692 (Mo.App.1976). Here there was evidence of the circumstances surrounding the agreement which attempted to resolve the ambiguity and the agreement can be construed without reference to that rule.

■ There was less drilling and blasting than contemplated and plaintiff apparently considered the volume of rock in its unit price, but knew the Highway Department's figure was an estimate. There was evidence that plaintiff was only to be paid for the volume of rock that it drilled and blasted. Plaintiff's president testified that Class C excavation would include percentage rock. Defendant presented evidence that percentage rock was not included in Class C excavation. Under defendant's description of Class C excavation plaintiff drilled, blasted, and was paid for all that was on the job. Defendant contended that percentage rock is not a part of Class C excavation and that the rock portion of percentage rock is only allocated to Class C excavation for payment because there was no appropriate classification for it in the Highway Department agreement. There was also evidence that plaintiff's president understood that plaintiff was not to be paid for anything other than the drilling and blasting of Class C rock that it performed. While there were some conflicts in the evidence, those are to be resolved by the trier of fact. It is a fair inference that it was not intended for plaintiff to drill and blast rock that could be reasonably excavated by earth moving equipment. Blasting is not ordinarily done except when necessary. The trial court's determination was supported by the evidence, was not against the weight of the evidence and did not erroneously declare or apply the law. Therefore we should affirm the judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is affirmed.

All concur.