**Joseph A. CASTELLI,
Plaintiff–Appellant,**

v.

**Santi P. CASTELLI, et al.,
Defendants–Respondents.**

Nos. 58307, 58318.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 19, 1991.

Joseph Howlett, Shaw, Howlett & Knappenberger, Clayton, for plaintiff-appellant.

Jerome Wallach, Robert E. Hoeynck, The Wallach Law Firm, St. Louis, for defendants-respondents.

SMITH, Presiding Judge.

Plaintiff appeals from a judgment in a court-tried case denying him equitable relief on either count of his two count petition.[1] We affirm.

Joseph Castelli, plaintiff, and Santi Castelli and Vita Pedrolie, defendants, are children of Concetta Castelli, now deceased. In approximately 1947 Concetta began a tuxedo rental business which over the years prospered. She was the dominant figure in the running of the business. Santi worked for the tuxedo business for 42 years at the time of trial. Joseph worked for that business for approximately five years and had a variety of jobs over his working career. This litigation arises over distribution of a parcel of real estate sold after Concetta's death and the ownership of stock in the Castelli tuxedo rental business.

The real estate, Burrow Court property, was purchased in October 1977 in the name of Concetta, Santi, Joseph and Vita as joint tenants with right of survivorship (JTWRS). In April 1978 the property was deeded by quit-claim by the four named owners to Concetta and Joseph as JTWRS. Concetta and Joseph borrowed money to build a house in which they would live. A second quitclaim deed was executed in June 1978 by the original four grantors and the spouses of Santi and Vita transferring title to Concetta and Joseph as JTWRS. This deed was executed to satisfy the lender that title had been correctly passed to Concetta and Joseph. In July 1978, Concetta and Joseph executed a quit claim deed to the property transferring ownership to Concetta, Joseph, Santi and Vita as JTWRS. Concetta did not record this deed, instead keeping it in the drawer of a safe

---

1. Inexplicably, two notices of appeal were filed by the plaintiff from the same judgment. The two appeals were consolidated.

at the place of business. Santi and Vita also had drawers in the safe and whenever the safe was opened it was done by someone other than Concetta. Concetta and Joseph lived in the Burrow Court property until her death in February 1985.

In November 1983, Concetta prepared a memorandum expressing her desires for disposition of the Burrow Court property on her death. That note provided that Joseph was to have the property unless he sold it. In that event Joseph was to receive fifty per cent of the proceeds with the remainder to be divided among certain delineated grandchildren of Concetta. The loan payments and expenses for the Burrow Court property were paid from a joint account in the names of Concetta and Vita, and after Concetta's death Vita continued such payments until the account was exhausted shortly prior to sale of the property.

In 1986 Joseph decided to sell the property and move into a condominium. Santi loaned him $95,000. As security the title to the condominium was placed in Santi's name. The tuxedo company also advanced $34,530.45 for the purchase of the condominium and to defray certain additional expenses of the Burrow Court property. The Burrow Court property was sold to Joseph's son, Joseph's ex-wife, and the son's step-grandfather for $225,000. This was less than the $250,000 Santi believed the property to be worth, but since the purchaser was Joseph's son, the price was accepted. Net proceeds from the sale totalled $196,148.13.

Prior to the closing Joseph expressed his intention to receive and retain the entire proceeds from the sale. Santi and Vita expressed their disapproval at Joseph not following the wishes of Concetta expressed in her memorandum. When Joseph persisted in his expression of intent, Santi recorded the July 1978 quit-claim deed. At the closing, from the proceeds, Santi made the following distributions: (1) Joseph received a check for $95,000 which was endorsed back to Santi, (2) the tuxedo company received a check for $34,530.45, (3) eight checks for $8,327.21 each were issued for eight grandchildren. At closing Joseph received from Santi a deed to the condominium.

■ In Count I, Joseph sought a declaration that he was entitled to all of the proceeds of the sale and an order requiring such proceeds to be given to him by Santi. This was based on his contention that the deed of July 1978 was invalid because it was never delivered and that he was therefore the sole owner of the property. Defendants contended, and the trial court found, that Joseph, with full knowledge of the relevant facts, accepted and ratified the wishes of his mother expressed in her memorandum and participated in the closing without protest thereby creating an accord and satisfaction. The court further found that the validity of the July 1978 deed was an irrelevant and immaterial issue. On appeal plaintiff attacks the court's judgment on Count I solely on the basis that the deed was not irrelevant because his actions at the closing were the result of duress.

Our review is limited to that set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) [1–3]. The trial court made extensive findings which are fully supported by the evidence. It noted particularly the evidence that Joseph, along with the other family members, treated the Burrow Court property as being in the nature of a family residence and that Joseph had agreed to abide by his mother's written wishes in regard to the property. The court also noted that in fact Joseph received the equivalent of approximately 66% of the net proceeds, more than he would have been entitled to under his mother's memorandum or pursuant to the July 1978 deed. Joseph's conduct at the closing indicated his approval of the manner of distribution and he accepted the transfer of the condominium to himself without protest. The evidence fully supports the trial court's finding of a ratification by Joseph of the general plan of distribution established by his mother.

■ His claim of duress is unsupported by the evidence.

"Duress is to be tested, not by the nature of the threats, but by the state of mind of the victim. The ultimate fact in issue is whether the victim was bereft of the free exercise of his will power; ... A claim of duress cannot generally be sustained where there is knowledge of the facts and opportunity for investigation, deliberation and reflection." *Aurora Bank v. Hamlin*, 609 S.W.2d 486 (Mo. App.1980) [1–6].

Joseph testified to threats made to him by Santi. Santi denied such threats. The court was entitled to believe Santi and obviously did. Joseph had full opportunity before the closing to investigate, deliberate, and reflect on the proposed distribution which he accepted without portest at the closing. We find no error in the trial court's judgment on Count I.

■ Count II sought to impose a constructive trust on certain shares of stock of Castelli Tuxedo Rental and Sales, Inc. registered in the name of Santi. Upon the formation of the company in 1947 Concetta caused to be issued 1082 shares of stock. She retained 652 shares and divided the remaining 430 shares equally among her five children. In October 1960 the eighty six shares issued to Joseph were surrendered by Joseph and a new certificate for those shares was issued to Santi. Joseph testified that the transfer was made to insulate the stock from his wife with whom he was in continuing marital discord and potential divorce. It was Joseph's contention that Santi was aware of the transfer and agreed to return the stock after the divorce. The divorce occurred in 1976.

Santi denied being aware of this transfer at the time it occurred or thereafter until 1989 when Joseph amended his petition to assert the present claim. The trial court made a finding crediting this testimony of Santi. It further found that Concetta had control of the stock book and directed the issuance, cancellation and reissuance of stock in the corporation in her discretion. There was no evidence that Joseph made any capital contribution or otherwise paid for the stock. In the thirty-eight years preceding Concetta's death, Santi worked continuously and full-time for the corporation. Joseph's service to the corporation was considerably less in length and was at times part-time only. There was evidence to support the trial court's findings and in particular the finding that Santi was not involved in the transfer, was unaware it occurred, and made no promises that he would hold the stock for Joseph and return it at some later date.

■ Clear, cogent and convincing evidence is required to establish a constructive trust. *Gardner v. Bernard*, 401 S.W.2d 415 (Mo.1966) [18, 19]; *Neal v. Sparks*, 773 S.W.2d 481 (Mo.App.1989) [3–5]. The trial court here found Joseph's evidence to be "both limited and unpersuasive, and wholly insufficient to meet the foregoing standard of proof." It further concluded that the "real thrust of Joseph's complaint regarding the disputed eighty six (86) shares of stock is directed toward the manner in which his now deceased mother, in her wisdom and superintending discretion, chose to allocate ownership of said shares." Santi's evidence established no fraud, actual or constructive, on his part and there was no showing he was unjustly enriched. There is substantial evidence to support the findings of the court and it has not erroneously applied the law. Under our limited scope of review there is no basis for reversal.

Judgment is affirmed.

SATZ and CARL R. GAERTNER, J., concur.