**SILVER DOLLAR CITY, INC.,**
**Plaintiff–Respondent,**

v.

**KITSMILLER CONSTRUCTION CO.,**
**INC., Defendant–Appellant.**

No. 20186.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 25, 1996.

Motion for Rehearing or Transfer
Denied Oct. 16, 1996.

Motion for Rehearing and Transfer to
Supreme Court Denied Nov. 19, 1996.

Steven E. Marsh, Hulston, Jones, Gammons & Marsh, Springfield, for defendant–appellant.

Grant Q. Haden, Tamara F. de Wild, Schroff, Glass & Newberry, P.C., Springfield, for plaintiff–respondent.

BARNEY, Presiding Judge.

On remand by this Court, Appellant Kitsmiller Construction Company, Inc., (Kitsmil-

ler) now appeals the judgment of the Circuit Court of Christian County, Missouri, in a declaratory judgment action originally brought by Silver Dollar City, Inc., (SDC) arising from a purported construction contract entered into between the parties herein.

In its judgment the hearing court held invalid certain arbitration provisions contained in a disputed construction contract. The hearing court determined that the contract itself was void in that it did not reflect a "meeting of the minds" of the parties because the contracting parties could not be identified with reasonable certainty. We reverse and remand.

## I.

### BACKGROUND

This suit began on April 10, 1992, when SDC filed a two count petition against Kitsmiller. It averred that Kitsmiller was demanding arbitration of a claim against SDC for $341,432.17 arising from a purported construction contract heretofore entered into by the parties providing for concrete construction work.[1]

In its Count I, SDC sought relief and an express declaration that the arbitration provisions be held unenforceable and requested that arbitration be permanently stayed. In Count II, SDC prayed for injunctive relief, barring Kitsmiller from pursuing arbitration.

Kitsmiller counterclaimed, requesting that the parties be required to submit to binding arbitration of Kitsmiller's claim.

In time, both parties respectively moved for summary judgment.

The prior hearing court held that Kitsmiller was not entitled to arbitration since its exclusive remedy was Chapter 429, RSMo 1986, as amended (mechanics' lien).

On appeal in *Silver Dollar City v. Kitsmiller Const. Co.*, 874 S.W.2d 526 (Mo.App. 1994), this Court determined that since SDC was the "Architect" under the terms of the disputed contract, but was not licensed or registered as one, the arbitration provisions contained in the disputed contract were otherwise valid and were not waived by Kitsmiller's failure to submit its claim against SDC to the "Architect" of the project.

Secondly, this Court determined that the provision in the disputed contract, which stated that the alleged contract would be governed by the law of the place where the project was placed, did not mean that Missouri's equitable mechanics' lien procedure would override the arbitration provisions of the contract and result in the mechanics' lien enforcement proceeding being the exclusive remedy for Kitsmiller.

This Court remanded the case stating that: "If the trial court finds the Contract void or, for some other reason, unenforceable, there is obviously no valid arbitration provision.... However, if the trial court finds the Contract is binding on the parties, Kitsmiller is entitled to an order compelling arbitration [per terms of the contract]." *Silver Dollar City*, 874 S.W.2d at 537.

As further background, other ancillary actions have taken place between the parties herein.

On February 10, 1992, Kitsmiller filed a mechanic's lien against the Grand Palace in the office of the Clerk of the Circuit Court of Taney County.[2] Additionally, Kitsmiller filed a demand for arbitration with the American Arbitration Association, in Case No. 57 110

---

1. The purported contract's essential terms are outlined under discussion relating to "III" below.

2. A separate mechanic's lien suit was also filed in CV792–265CC on May 14, 1992, by Builder's Steel Co., Inc., against the Grand Palace, naming as defendants Tulsa Steel Mfg. Co., and SDC. In turn, in a three count amended cross-claim, SDC joined Kitsmiller as a party. In its alternative

pleadings against Kitsmiller, SDC asserted negligent performance under a construction contract, misrepresentation and reckless indifference to its rights and then prayed for damages against Kitsmiller. Kitsmiller then filed a cross-claim and counterclaim alleging that SDC owed it $341,-432.14. Kitsmiller then asked that the case be stayed pending the outcome of arbitration between Kitsmiller and SDC, or alternatively, that any proceedings in the case between Kitsmiller

0018 92, to which SDC responded by entering a general appearance without consenting to the jurisdiction of the arbitration tribunal. SDC then pled, *inter alia,* that the purported contract was "void, has been voided, or is revocable upon the law or in equity."

## II.

### KITSMILLER'S ALLEGATIONS OF HEARING COURT ERROR

Kitsmiller posits five major points of error. We address only Point One since it is dispositive herein. Kitsmiller argues that the hearing court erred when it determined that there was no contract entered into between the parties herein.

## III.

### TERMS OF THE DISPUTED CONTRACT

The first page of the disputed agreement was dated June 27, 1991, and denominated SDC as the "Owner" and Kitsmiller and Vinyard Construction Co., Inc., JV (Vinyard) as the "Contractor." [3] It provided that the Contractor was to perform certain concrete construction work on the "Grand Palace" theater project in Branson, Missouri, and in return SDC promised to pay the Contractor $648,656.00. The disputed contract also contained an arbitration provision.[4]

A factual dispute centers around the signature portion of the purported contract wherein only Rick Todd, the representative of "Owner", SDC, and Cary A. Paschke, Project Manager of "Contractor", Kitsmiller, have signed the document. No other signatures or parties appear on the page. Unlike the face sheet, the name "Vinyard" is not found.

## IV.

### CONTENTIONS OF THE PARTIES

In the instant hearing and on appeal herein, SDC contends that it was contracting with a joint venture consisting of Kitsmiller and Vinyard and not Kitsmiller alone.[5] It alleges that it did so because Kitsmiller lacked the financial strength to be engaged in such a project alone and was unable to put up the necessary performance, labor and material bond without Vinyard's financial assistance. SDC makes allegations of misrepresentation on the part of Kitsmiller and Vinyard when they held themselves out to be jointly involved in the project, knowing they would not be.

SDC further contends that in contracting with the joint venture it did so because of Vinyard's expertise in "tilt up" concrete work [6], since Kitsmiller had little or no experience in this type of work. SDC also contends that the term "Kitsmiller" or "Kitsmiller Construction Co., Inc.," was a shorthand method for describing the joint venture. Therefore, when the term "Kitsmiller Construction Co., Inc.," was used in the signature portion of the disputed document, SDC interpreted the term to mean the joint venture of Kitsmiller and Vinyard, without which it would never have entered into the contract.

SDC steadfastly denies that it knew that Kitsmiller and Vinyard were not engaged in

---

and SDC be stayed pending the outcome of arbitration. We cannot glean from the record the status of this action.

3. The purported agreement consisted of a pre-printed form denominated as "AIA Document A107 (1987 Edition)", copyrighted by The American Institute of Architects. It contained 21 pre-printed "Articles", together with typed-in attachments "A" through "E".

4. Article 10.8 provided that all claims or disputes between the Contractor and the Owner arising out of or relating to the Contract, would be decided by arbitration after initial presentation to the Architect of the project. The American Arbitration Association was named the arbitrating authority.

5. It should be noted that Vinyard has never been made a party to this particular litigation.

6. Donald Lee Mustain, an employee of Kitsmiller testified that "tilt-up" concrete work meant a "floor that's poured on the ground and then tilted up. To make a wall panel."

a joint venture project and freely accepted Kitsmiller's work on the project. SDC contends that it was not until Kitsmiller removed itself from the project about October 17, 1991, after a series of disputes had arisen between SDC and Kitsmiller that SDC came upon this knowledge.[7]

In this latest court hearing forming the basis for this appeal, SDC was allowed to amend its original declaratory petition by interlineation to assert that the contract in question did "not reflect the mutual assent, or the meeting of the minds, of the parties hereto, and [was] void." Over objection of Kitsmiller, the hearing court allowed SDC to amend the pleadings to conform to the evidence consistent with the prior theories pled.

Kitsmiller, on the other hand, maintains that SDC was always aware of Kitsmiller's sole involvement in the project and that SDC's project manager, Wayne Brodt, had specifically authorized Kitsmiller to proceed on its own without a performance bond. It also maintains that SDC prepared the last page of the disputed contract which had typed thereon "CONTRACTOR: Kitsmiller Construction Co., Inc.", thereby showing that SDC was contracting only with Kitsmiller as opposed to a joint venture of Kitsmiller and Vinyard. Further, Kitsmiller contends that during all the litigation herein SDC essentially acknowledged the existence of a contract, until the instant hearing herein. Therefore, Kitsmiller contends there exists a valid contract and that the arbitration provisions contained in the disputed contract are viable and that all disputes between Kitsmiller and SDC arising from the construction work performed by Kitsmiller should be submitted to the appropriate arbitration tribunal named in the purported contract.

## V.

### STANDARD OF REVIEW

■ The review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be upheld unless there is no substantial evidence to support it, is against the weight of the evidence, or it erroneously declares or applies the law. *Behr v. Bird Way, Inc.*, 923 S.W.2d 470, 472 (Mo.App. 1996).

■ In determining the sufficiency of the evidence, an appellate court accepts as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 868 S.W.2d 118, 120 (Mo.App.1993). We defer to the factual findings of the trial judge who is in a superior position to assess credibility. *Behr*, 923 S.W.2d at 472. As the trier of fact, the court may disbelieve and reject any portion of the testimony. *Computer Network, Ltd. v. Purcell Tire & Rubber, Co.*, 747 S.W.2d 669, 673 (Mo.App.1988). "[T]he fact that there is evidence or testimony in the record which may have supported a different conclusion does not demonstrate that the judgment of the court is contrary to the weight of the evidence." *Id.* However, on review of a court-tried case this Court will independently evaluate the trial court's conclusions of law. *Unlimited Equip. Lines, Inc. v. Graphic Arts Centre, Inc.*, 889 S.W.2d 926, 932 (Mo.App. 1994).

### DISCUSSION AND DECISION

In review of Kitsmiller's first point, that the court erred in concluding that there is no binding contract between Kitsmiller and SDC, we note that "the first essential of a valid contract is the existence of two or more competent parties who agree." *Shofler v. Jordan*, 284 S.W.2d 612, 614 (Mo.App.1955). "[A]lthough the parties need not be named formally there can be no enforceable agreement unless the contracting parties may be identified with reasonable certainty." *Id.* (citation omitted).

"[T]he meeting of the minds essential to formation of a contract may not be found or

---

**7.** The disputes centered around change orders to the project contract, progress of work, payment of vendors and subcontractors and other subjects.

determined on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested by their words or acts." *Id.* at 615; *see also Gateway Exteriors, Inc. v. Suntide Homes, Inc.,* 882 S.W.2d 275, 279 (Mo.App.1994); *Brand v. Boatmen's Bank of Cape Girardeau,* 824 S.W.2d 89, 91 (Mo.App.1992); *Computer Network,* 747 S.W.2d at 675.

The foregoing rule represents the so-called "objective theory" of contracts, which emphasizes the outward manifestations of assent made to the other party in contrast to the idea that the contract was a true 'meeting of the minds.' *Computer Network,* 747 S.W.2d at 675. This is in accord with the phraseology of RESTATEMENT (SECOND) OF CONTRACTS § 17 (1981), which prefers the term "manifestation of mutual assent," rather than "meeting of the minds." However, as observed from the language of the foregoing cases, courts continue to utilize the term and concept of "meeting of the minds" as a prerequisite to parties entering into a contractual relationship. .

■ The point being made here is that what a person may have intended subjectively is not controlling. The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact. *Computer Network,* 747 S.W.2d at 675.

■ It is well established in Missouri that the parol evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous. *Headrick Outdoor, Inc., v. Middendorf,* 907 S.W.2d 297, 300 (Mo.App.1995).[8]

■ Whether a contract is ambiguous is a question of law. *Harris v. Union Elec. Co.,* 622 S.W.2d 239, 247 (Mo.App.1981). "An ambiguity exists when there is more than one reasonable interpretation that can be gleaned from the contract language." *Coughenour v. Bates,* 785 S.W.2d 291, 297 (Mo.App.1990).

■ In review of the purported contract we note that on page one of the document the "Contractor" is designated as Kitsmiller and Vinyard. However, the signature line on the last page of the document contains a typed-in portion which designates the "Contractor" as being Kitsmiller. We, therefore, conclude that the document is ambiguous because the identity of the contracting parties cannot be clearly determined from the face of the document.

We are aware of the rule that states when there is conflict between the typewritten and preprinted language in a contract, the typewritten will prevail as the true intent of the parties. *See Century 21–Andrews Realty, Inc., v. Adams,* 691 S.W.2d 511, 512 (Mo.App. 1985). Kitsmiller likewise argues that since SDC prepared the document in question it should be construed against SDC.

■ These two rules of construction should be applied in conjunction with other rules of construction or, at the very least, . only when other means of construction fail or are unavailable. *See N.B. Harty Gen. Contractors, Inc. v. West Plains Bridge and Grading Co.,* 598 S.W.2d 194, 197 (Mo.App. 1980); *see also* WILLISTON ON CONTRACTS § 622 (1961).

The Missouri Supreme Court recently held in *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995) that:

> The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent. In order to determine the intent of the parties, it is often necessary to consider not only the contract between the parties, but 'subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties.' (Citations omitted.)

---

**8.** *See also* RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981).

In the instant case there are sufficient objective documents and other evidence that assist us in resolving the ambiguity contained in the purported agreement. The evidence shows, and the hearing court found, *inter alia*, that during the course of the negotiations SDC was seeking a relationship with the joint venture composed of Kitsmiller and Vinyard both for reasons of expertise, financial strength and bonding capacity, without which it would never have entered into a contract with Kitsmiller alone.

In response to SDC's request for bids, Kitsmiller submitted documents showing that it was a joint venture. These included a proposed bonding agreement, insurance agreement and an outline of the joint venture's work history.

On review, we determine that the evidence supports the hearing court's conclusion that there was not a meeting of the minds, i.e., a manifestation of mutual assent, by the parties herein, not because of fraud or misrepresentation by Kitsmiller, as the hearing court's finding of facts suggest, but because of the unilateral mistake of SDC.[9] This occurred when SDC's agents prepared the final signature page of the disputed contract and typed in only the name of Kitsmiller Construction Co., Inc., as the Contractor. The hearing court found, and the negotiations preceding the signing of the disputed contract support the proposition, that SDC intended the Contractor to be an entity comprised of Kitsmiller and Vinyard, as a joint venture. We also determine that Kitsmiller was aware of SDC's mistake.

The evidence strongly suggests that SDC's agents prepared the contract in its totality.

SDC's agent signed the contract *after* Kitsmiller executed its signature thereto and had the opportunity to review the contract at length.[10]

The mistake as to the identities of the true parties to the contract involved a basic assumption on which the purported contract was entered into in the first place and which had a material effect on the agreed exchange of performances. *See* RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981). "Mistakes as to the identity of a party have sometimes been treated as distinct from other mistakes, but the modern trend is to apply the rules applicable to other mistakes. *Cf.* Uniform Commercial Code § 2–403(1)(a)." *Id.*

"The RESTATEMENT [(SECOND) OF CONTRACTS] recognizes that relief may be given for a unilateral mistake when (a) the effect of the mistake is such that enforcement would be 'unconscionable' or (b) the other party had reason to know of the mistake." *In re Hysinger,* 785 S.W.2d 619, 624 (Mo.App.1990); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981).[11]

As one commentator on the subject of contracts has concluded, "[t]here is practically universal agreement that, if the material mistake of one party was caused by the other, either purposely or innocently, or was known to him, or was of such character and accompanied by such circumstances that he had reason to know of it, the mistaken party has a right to rescission [of the contract]." 3 CORBIN ON CONTRACTS § 610 AT 692 (1960); *see also Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 876 (Mo.App.1984).[12]

SDC's actions, subsequent to the date of the signing of the disputed document, howev-

9. The hearing court made no express conclusions of law that fraud was involved, rather it stated that there was "no meeting of the minds" of the parties and hence no contract.

10. The hearing court made no finding of fact relative to this matter.

11. It should be pointed out, however, that under RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981), a party bears the risk of a mistake when "(a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge

with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so."

12. The RESTATEMENT (SECOND) OF CONTRACTS now recognizes specific rights and obligations relating to rescission of contract, whether arising from fraud or mistake. *See* RESTATEMENT (SECOND) OF CONTRACTS § 381 (1981).

er, were not consistent with avoidance or rescission of the disputed contract. "A party seeking rescission must act promptly on discovering the reason and need for his rescission. He must act before the other party has changed his position or is placed in a position where he would be prejudiced by a rescission or where a third party would be harmed by a rescission." *Sheinbein,* 670 S.W.2d at 877; *see also Blakeley v. Bradley,* 281 S.W.2d 835, 841–42 (Mo.1955).[13]

After affixing its agent's signature to the contract in question the evidence shows that SDC made no effort to obtain Vinyard's signature to the document or otherwise attempt to judicially reform or set aside the instrument. By its objective, manifested deeds and words, SDC proceeded either to ratify the terms of the contract or waived its specific right to have the contract declared void by allowing Kitsmiller, and Kitsmiller alone, to carry out the provisions of the contract in question.

"There is a waiver of the right to rescind a building contract where the contract is treated, by the party having such right, as still in force. So, also a party to a building contract may waive his right to rescind the contract by not exercising such right promptly." 17A C.J.S. CONTRACTS § 443 (1963). "A waiver of the right to disaffirm does not require a consideration such as is necessary to support a contract; and a waiver may often take place in consequence of laches merely or in consequence of acting inconsistently with the idea of insisting on the right which is waived." 17A C.J.S. CONTRACTS § 445 (1963).

" '[R]atification' implies assent to acts done by another that inure to the other's benefit . . . and assenting to the act constitutes such a meeting of minds as to fulfill the elements of a contract and thereby is binding upon the one receiving the benefit." *White v. McCoy Land Co.,* 229 Mo.App. 1019, 87 S.W.2d 672, 689 (1935); *see also Castelli v. Castelli,* 805 S.W.2d 718, 720 (Mo.App.1991); *Weisert v.*

**13.** A contract voidable on the ground of fraud may be rescinded or canceled unless, by act of modification, the right to rescind is waived.

*Bramman,* 358 Mo. 636, 216 S.W.2d 430, 435 (1948).

On the other hand, "[t]o be construed as an implied waiver [one's] acts must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of their conduct is possible." *Steinberg v. Fleischer,* 706 S.W.2d 901, 905 (Mo.App. 1986).

During the subsequent three months after the signing of the disputed contract, Kitsmiller performed under the terms of the disputed contract and the evidence shows that SDC made regular payments under the procedure set up by the disputed contract.

Vinyard's name did not appear on any of the checks issued by SDC to Kitsmiller or to Kitsmiller and any materialman, nor did the words "joint venture" appear on those checks. For example, by check dated July 12, 1991, SDC paid to Kitsmiller Const. Co., Inc., the amount of $51,625.00. By check dated August 10, 1991, SDC paid Kitsmiller and Beaver Concrete (a materialman) the sum of $48,635.40. This was followed by two checks also dated August 10, 1991, the first check from SDC paid Kitsmiller and Doing Steel, Inc., a materialman, the amount of $32,000.00. In return, Kitsmiller also supplied a lien waiver to SDC, executed solely by Kitsmiller. The second check by SDC to Kitsmiller was for $154,196.90.

The RESTATEMENT (SECOND) OF CONTRACTS § 380 (1981) provides, in pertinent part, as follows:

(1) The power of a party to avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost if, after the circumstances that made the contract voidable have ceased to exist, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

*Beck v. Hoel–Steffen Constr. Co.,* 605 S.W.2d 810, 813 (Mo.App.1980).

(2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.[14]

The evidence also showed that SDC obtained a modification of the disputed contract's original term. In Change Order Number 1 dated July 20, 1991, and showing an original Contract Date of June 21,[sic] 1991, SDC, Kitsmiller and Wynn Construction Co., Inc., (the construction project manager for SDC) jointly agreed to a reduction of the original disputed contract's term. Payment for the work to be performed by the named Contractor, "Kitsmiller Construction", was reduced from $648,656.00 (the consideration originally designated in the June 27, 1991, disputed contract) to $608,337.00, constituting a diminution of $40,319.00 payable to Kitsmiller. By amending the terms of the original agreement, this constitutes evidence of SDC's ratification or approval of the contract. *See Beck,* 605 S.W.2d at 814.

Further, the record shows that in the amended cross-claim asserted against Kitsmiller in the Taney County mechanic's lien action[15], SDC pleaded facts supporting a prayer in its Count I thereof for damages against Kitsmiller alone arising from negligent performance and breach of the disputed contract.

In Count II SDC pleaded fraudulent inducement by Kitsmiller to enter into the disputed contract. Nevertheless, even in Count II, SDC sought damages under the disputed contract for Kitsmiller's "acts and omissions" while performing the contract.

In Count III SDC realleged the facts as outlined in Counts I and II and prayed for exemplary damages. Conceptually, all three Counts are similar in their recognition of SDC having entered into a contract with Kitsmiller and being damaged by Kitsmiller's acts and omissions.

■ Admissions arising from a proceeding other than the instant one cannot be considered judicial admissions in the sense of their being binding concessions of the truth of some material fact, *see Byron J. Myers, Inc. v. Bradbury,* 595 S.W.2d 724, 726 (Mo. App.1980), nevertheless, they constitute admissions which the trier of fact could properly have considered. *May v. May,* 294 S.W.2d 627, 634 (Mo.App.1956).

■ We recognize the rule that alternative fact allegations made in good faith and based on genuine doubt are not considered admissions (sometimes referred to as admissions against interest) against the pleader. *Rauch Lumber Co. v. Medallion Dev. Corp.,* 808 S.W.2d 10, 12 (Mo.App.1991). Alternative fact allegations *not based* on genuine doubt may be considered as admissions against interest. *Id.* "Such a holding is consistent with Rule 55.03 which states that an attorney, by signing a pleading certifies that 'to the best of his knowledge, information and belief,' the pleadings are 'well grounded in fact' and not interposed 'to cause unnecessary delay or needless increase in the cost of litigation.' " *Id.* at 13.

■ In conjunction with the review of our opinion in *Silver Dollar City, supra,* Counts I, II and III show that SDC had no genuine doubt that it had entered into a contract with Kitsmiller and was damaged as a result.[16] There being no genuine doubt as to the facts so pleaded, it follows that the uncontroverted

---

14. *See also* RESTATEMENT (SECOND) OF CONTRACTS § 381 (1981).

15. We find no evidence in the record that Vinyard was named as a party.

16. Although the pleadings in Count II asserted fraudulent inducement by Kitsmiller causing SDC to enter into the contract, SDC also sought

damages under the disputed contract for Kitsmiller's acts of omissions thereof. In Missouri, a victim of fraud has the option of rescinding the contract or affirming the contract and suing for damages, but he cannot do both. *Stadium Bank v. Milton,* 589 S.W.2d 338, 344–45 (Mo.App. 1979). *Crues v. KFC Corp.,* 546 F.Supp. 217, 220 (E.D.Mo.1982) holds that by "suing for the 'benefit of his bargain' in damages, plaintiff therefore

facts of these three counts could have been considered by the trier of facts as admissions against SDC.[17]

All of the foregoing probative evidence shows that SDC, by its express acts and words either ratified the disputed contract or specifically waived its rights to hold the disputed contract a nullity. *SEE* RESTATEMENT (SECOND) OF CONTRACTS § 380 (1981). SDC therefore treated the disputed contract with Kitsmiller as a binding agreement. The hearing court erred when it determined that it was not until Kitsmiller walked off the project in mid-October 1991 (almost three months after the signing of the disputed contract) that SDC determined Kitsmiller was not operating as part of the joint venture of Kitsmiller and Vinyard. This conclusion is against the weight of the evidence.[18] *Murphy v. Carron*, 536 S.W.2d at 32. The court likewise erred where it concluded that there was no legally binding contract between SDC and Kitsmiller and that the arbitration provisions were invalid.

Having concluded that the contract dated June 27, 1991, entered into between SDC and Kitsmiller is a binding contract, Kitsmiller is entitled to an order compelling arbitration per the terms of the contract. *Silver Dollar City*, 874 S.W.2d at 537.

The Judgment is reversed and remanded to the hearing court for further proceedings consistent with this opinion.

SHRUM, J., concurs in separate opinion.

PREWITT, J., concurs.

SHRUM, Judge, concurring.

I concur in the result reached. The trial court found that Kitsmiller intended to con-

tract by itself with SDC "for the lobby foundations, house foundations, including floor slabs and all precasts on the Grand Palace Project in Branson. . . ." The cost to SDC for this work as it was originally planned was $648,656. As of September 13, 1991, SDC had paid over $450,000 to Kitsmiller on this project but now claims there was no contract for the work Kitsmiller performed. No dispute exists in this case about the fact that SDC accepted the benefits bestowed upon it by Kitsmiller's endeavors to perform the work described in the document SDC now denies is a contract.

The consequence of SDC's acceptance of benefits is stated in the case of *Dubail v. Medical West Bldg. Corp.*, 372 S.W.2d 128 (Mo.1963):

"'As a general rule, by accepting benefits a person may be estopped from questioning the existence, validity, and effect of a contract. A party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens.'"

*Id.* at 132 (citing 31 C.J.S. Estoppel § 110, pp. 350–51). *See also National Advertising Co. v. Herold*, 735 S.W.2d 74, 78[5] (Mo.App. 1987); *Long v. Huffman*, 557 S.W.2d 911, 915[11] (Mo.App.1977); *Labor Discount Center, Inc. v. State Bank and Trust Co.*, 526 S.W.2d 407, 425[22] (Mo.App.1975). This basic principle has also been characterized in terms of acceptance of performance. *See HDH Dev. and Realty, Corp. Inc. v. Smith*, 717 S.W.2d 274, 277[3] (Mo.App.1986).

Implicit in the trial court's judgment is a finding that SDC neither claimed the bene-

---

affirmed the contract and was required to perform the burdens of the contract as well."

**17.** Rule 55.03, Missouri Rules of Civil Procedure (1996) also states that by pleading the attorney signing the pleadings certifies that, "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

**18.** This Court sets aside a judgment on the ground that it is against the weight of the evidence only when it has a firm belief that the judgment is wrong. Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief. *Looney v. Eshleman*, 783 S.W.2d 164, 165 (Mo.App.1990).

fits of Kitsmiller's work performed under the AIA document nor accepted that firm's performance thereunder. On this record, I believe that finding to be against the weight of the evidence. In my view, the trial court erred when it failed to find that SDC was estopped from questioning the existence of the contract, notwithstanding the court's conclusion that there was no meeting of the minds and thus no contract. Kitsmiller makes this assertion of error, and I find it to be dispositive.